

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-1997

# United States v. Oser

Precedential or Non-Precedential:

Docket 95-1107,95-1108

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Oser" (1997). *1997 Decisions.* Paper 58.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/58

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————

Nos. 95-1107 & 95-1108

———————

UNITED STATES OF AMERICA

v.

NEIL OSER, a/k/a "Lou"

Neil Oser,
                    Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 92-cr-00424)

———————

Argued on Rehearing September 20, 1996

Before a reconstituted panel of SLOVITER, Chief Judge,
ROTH and ROSENN, Circuit Judges[*]

———————

(Filed March 6, 1997)

Joshua Markowitz
Howard A. Teichman (Argued)
Markowitz & Zindler
3131 Princeton Pike, Bldg. 3D
Lawrenceville, NJ  08648

        Attorneys for Appellant

———————

[*]  The appeal was originally submitted pursuant to Third Circuit
LAR 34.1(a) on May 21, 1996 before a panel consisting of Chief
Judge Sloviter, Judges Sarokin and Rosenn.  A judgment order was
entered on July 8, 1996.  Appellant filed a petition for
rehearing which was granted by the panel and the panel was
reconstituted after the retirement of Judge Sarokin.

1

Seth Weber (Argued)
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106

          Attorney for Appellee


                    OPINION OF THE COURT

SLOVITER, Chief Judge.

          Appellant Neil Oser was sentenced in the United States

District Court for the Eastern District of Pennsylvania for his

role in two drug conspiracies to which he pled guilty.  He argues

that the district court erred in ordering that the sentences

imposed should run consecutively rather than concurrently and/or

co-terminously with the term of imprisonment which he is serving

for a currency reporting violation to which he pled guilty in the

federal court in New York.  He also argues that the district

court erred in setting his criminal history level.

                            **I.**

          On June 19, 1991, United States Customs Agents at JFK

Airport arrested Neil Oser before he boarded a flight bound for

Lagos, Nigeria for understating on customs forms the amount of

United States currency he was transporting.  He had reported that

he was carrying $65,000 in cash, when in fact he carried a total

of $790,000.  Oser pled guilty in the United States District

Court for the Eastern District of New York to a charge of failing

to accurately report the transport of cash abroad in violation of

31 U.S.C. § 5316.  That plea, a waiver of indictment, and a plea

agreement were entered on November 26, 1991.  Oser was released

                              2

pending sentencing on condition and with notice that he would be subject to an additional sentence should he commit another offense while on pretrial release. On July 23, 1993, the district court in New York rejected Oser's various requests for a downward departure and sentenced him to 28 months in prison.

In the interim, Oser was indicted on July 29, 1992, in the Eastern District of Pennsylvania and charged with conspiracy to import heroin into the United States in violation of 21 U.S.C. § 963 and money laundering of $7,200 in postal money orders that were drug payments to his brother in violation of 18 U.S.C. § 1956(a). The Pennsylvania indictment included as an overt act Oser's June 19, 1991 "attempt[] to smuggle" approximately $800,000 cash out of the United States from New York, although that paragraph made no reference to drugs or the subsequent heroin conspiracy described in the indictment. The substance of the Pennsylvania indictment and all of the remaining overt acts refer to transactions pertinent to a conspiracy to import heroin through March 1992.

On September 3, 1993, Oser was again indicted in the District of New Jersey and charged with conspiracy to import heroin into the United States in violation of 21 U.S.C. § 963 and possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The New Jersey indictment alleged that the criminal activity charged took place from July 1992 through February 1993, a period that included activity after Oser pled guilty to the false currency charge in New York. The government contends that although both the Pennsylvania and New Jersey

3

indictments involve international heroin smuggling activities, they involved different participants and different time periods, a contention supported by the facts set forth in the pre-sentence report.[1]

Oser pled guilty to the Pennsylvania conspiracy and money laundering charges on December 3, 1992. The New Jersey case was transferred to the Eastern District of Pennsylvania in May 1994 in order to consolidate for disposition. On June 13, 1994, Oser also pled guilty to the New Jersey conspiracy charge.

On January 26, 1995, the district court sentenced Oser to a nine year term of imprisonment on the New Jersey charge, with an additional one year enhancement pursuant to 18 U.S.C. § 3147 and U.S.S.G. § 2J1.7 because Oser committed the New Jersey offense while on pre-sentence release from the New York conviction. The district court imposed an identical sentence on the Pennsylvania conspiracy charge to run concurrently with the New Jersey sentence. On the Pennsylvania money laundering charge, the court sentenced Oser to five years, plus an additional one-year sentence for commission of the crime while on release, also to run concurrently with the other sentences.

---

[1] According to the pre-sentence report, the Pennsylvania conspiracy involved only Neil Oser and his brother, Marty Oser, in an agreement made in Philadelphia with several confidential informants to import two separate 1 kilogram shipments of heroin into the United States. The New Jersey conspiracy, by contrast, involved a much larger and more sophisticated network of couriers as well as co-conspirators, responsible for importing multi-kilogram shipments of heroine. The drug network, which may have been organized by Neil Oser, also allegedly engaged co-conspirators in distributing the imported heroin to connections in Chicago.

However, the district court ordered the New Jersey and Pennsylvania sentences to run consecutively to the 10 months remaining on Oser's New York sentence.

Oser originally argued in his appellate brief that he was not put on adequate notice that committing a crime while on pre-sentence release could result in an increased sentence pursuant to 18 U.S.C. § 3147 and U.S.S.G. § 2J1.7. He withdrew that argument following a showing by the government that before Oser was released on the New York charges, he signed an Appearance Bond which stipulated the conditions of his release and expressly stated that "DEFENDANT ADVISED BY MAGISTRATE OF APPLICABLE PROVISIONS OF 18 U.S.C. § 3156/3147 IN WRITING." Gov't App. at 1. That advice appeared on a separate page under the heading, "Advice of Penalties and Sanctions" that was also signed by Oser and that clearly warned Oser of the enhanced penalty he faced for committing a crime while on bond. Id. at 4. On oral argument, Oser conceded that he did, in fact, receive sufficient notice that any offense committed while on bond would result in an enhanced sentence, and he no longer challenges the one year enhancement imposed by the district court.

Instead, Oser's argument now is limited to his contention that under U.S.S.G. § 5G1.3(b) and § 5G1.3(c) the district court here was required to impose the conspiracy sentences to be served concurrent to the New York currency charges, and that the district court erred in fixing his criminal history level.

5

We have jurisdiction over the appeal of this sentence pursuant to 28 U.S.C. § 1291.  Our review of the construction of the Sentencing Guidelines is plenary.  <u>United States v. Holifield</u>, 53 F.2d 11, 13 (3d Cir. 1995).

**II.**

Section 5G1.3 of the Sentencing Guidelines is the provision designed to guide the district courts in determining whether a sentence on a defendant subject to an undischarged term of imprisonment is to run consecutively or concurrently.  At the time of sentencing, that section, which has since been amended, provided:

§5G1.3<u>Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment</u>

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

> (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

> (c) (Policy Statement)  In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

U.S.S.G. § 561.3 (1994).

6

Both parties agree that § 5G1.3(a) is inapplicable here. The second offense (subject of the Pennsylvania indictment) was committed before Oser was sentenced on the first offense, the New York money reporting charge. The dispute instead turns first on the applicability of § 5G1.3(b).

U.S.S.G. § 5G1.3(b) requires a judge to impose a sentence to run concurrently to an undischarged term of imprisonment when the conduct that gave rise to the prior conviction has "been fully taken into account <u>in the determination of the offense level</u> for the instant offense." U.S.S.G. § 5G1.3(b) (emphasis added). Earlier conduct has been "fully taken into account" where it has been used as a "§ 1B1.3 (Relevant Conduct) factor in determining the offense level for the instant offense." U.S.S.G. § 5G1.3, comment. (n.2). Such a consideration may occur when the separate offenses are part of the "same criminal conduct," or "part of the same course of conduct." <u>Id.</u>

The district court determined that Oser's base offense level was 34, which it calculated solely because the total quantity of heroin involved in the two conspiracies to import heroin from Nigeria was more than 3 but lower than 10 kilograms. App. at 61. It then imposed a three level enhancement pursuant to § 2J1.7 because the offense was committed while Oser was on pre-sentence release from the New York offense.[2] <u>Id.</u> It is

---

[2] U.S.S.G. § 2J1.7 provides:

If an enhancement under 18 U.S.C. § 3147 applies,
add 3 levels to the offense level
for the offense committed while on

7

important to note that this enhancement applies irrespective of any relationship vel non between the New York offense and the Pennsylvania or New Jersey conspiracies.  Thus Oser would have been subject to this enhancement even if the New York offense for which he was released had been a sex crime rather than a currency offense.  Nothing in the district court's imposition of sentence suggests that the fact that Oser had been discovered underreporting the amount of currency he was carrying as he left the country was viewed by the district court in Pennsylvania as relevant conduct in determining Oser's offense level.

The district court acted on the basis of the pre-sentence report and its rulings on objections thereto by the parties.  That report carefully listed all the "related cases," and included the charges against Martin Oser (in the Pennsylvania

(..continued)
> release as if this section were a
> specific offense characteristic
> contained in the offense guideline
> for the offense committed on
> release.

18 U.S.C. § 3147 states:

[A] person convicted of an offense committed while
> released under this chapter shall
> be sentenced, in addition to the
> sentence prescribed for the offense
> to --
>> (1) a term of imprisonment of not more
>> than ten years if the offense is a
>> felony; or
>> (2) a term of imprisonment of not more
>> than one year if the offense is a
>> misdemeanor.

A term of imprisonment imposed under this section
> shall be consecutive to any other
> sentence of imprisonment.

8

case), and those against Robert Gist and Femi Ojo (in the New Jersey case). Similarly, the "offense conduct" detailed in the pre-sentence report covers only the conspiracies in the Pennsylvania and New Jersey cases. The references to the New York criminal charge are limited to the fact of its filing and the fact that Oser was on release when he committed the offenses covered in the New Jersey indictment. We see no basis to conclude that Oser's conduct that was the basis of his New York currency crime, i.e. underreporting of the amount of funds being carried out of the country, played any part in the determination of the offense level for his conspiracy sentence.

Oser claims that § 5G1.3(b) applies to him because the government named his New York underreporting conviction as an overt act in the Pennsylvania conspiracy indictment, thereby establishing that the two crimes were "part of the same course of conduct." While that contention seems plausible on its face, it does not withstand close scrutiny.

The Commentary to the guideline gives as an illustration of the applicability of § 5G1.3(b) the situation where a defendant has been convicted in federal court for sale of 30 grams of cocaine following an earlier state court conviction for cocaine sales of 15 grams. The two offenses are to be treated as part of the same course of conduct if that defendant would be deemed responsible for the sale of a total of 45 grams of cocaine as relevant conduct resulting in an offense level of 14. The Commentary states that because the offense level in the federal case was calculated based on the quantity of drugs in

both charges, under § 5G1.3(b) the court should impose the federal sentence to run concurrently with the state sentence. It explains: "Because the defendant has already served six months on the related state charge, a sentence of seven months, imposed to run concurrently with the remainder of the defendant's state sentence, achieves this result." U.S.S.G. § 5G1.3(b), comment. (n.2).

The district court in Oser's case calculated the amount of heroin from both the Pennsylvania and New Jersey conspiracies in setting the relevant conduct as involving from 3 to 10 kilograms. At sentencing the court stated that

> we will confine ourselves to what was agreed as the basis for the plea of guilty in New Jersey, which would be a quantity between 3 and 10, and to which one would add the .446 of a kilogram from Philadelphia . . . . that is the figure which I will use as the drug quantity in calculating the offense level. We are proceeding, of course, with these charges grouped and that explains the linking of the New Jersey and Pennsylvania charges.

Transcript of Sentencing, January 26, 1995 at 17. Applying the illustration from the Commentary, this means the court had fully taken into account the New Jersey conduct in setting the offense level for the Pennsylvania offense.

Oser relies on the fact that the government included as an overt act in the Pennsylvania indictment the following reference to the New York conduct:

> On or about June 19, 1991, defendant NEIL OSER attempted to smuggle approximately $800,000 cash out of the United States at John F.

10

Kennedy International Airport in
New York with a final destination
of Lagos, Nigeria.

Except for this single sentence, there is no subsequent reference or tie-up to Oser's New York conduct occurring in June 1991. Instead, the Pennsylvania indictment is confined to two transactions involving importation of heroin from Nigeria, which began with a telephone conversation between a confidential informant and Neil Oser's brother Marty in October 1991 (almost four months after the New York arrest) to set up a meeting to discuss arrangements for importation of heroin from Nigeria, via pick up at the airport in Amsterdam, effected early November 1991, and arrangements for a second shipment again through Amsterdam. The indictment alleged participation by two confidential informants, one or more Drug Enforcement Administration agents, and Neil Oser, who in the course of the conspiracy cashed $7,200 of postal money orders given to his brother as part payment for one of the deliveries. The last overt act alleged was a meeting between Neil Oser, his brother and DEA agents on March 31, 1992 to discuss additional importation of heroin. The mere reference to the New York conduct as an overt act, nowhere else explained, cannot be used to evidence that the underreporting of currency in New York was part of the same course of conduct charged in the Pennsylvania indictment.

Nor is there any suggestion that the underreporting was part of the conduct alleged in New Jersey, which alleged a conspiracy between Neil Oser and Robert Gist to import

11

multikilograms of heroin from Nigeria from about July 1992 until February 1993 and which, as further detailed in the pre-sentence report, involved smuggling heroin into the United States through the lining of suit jackets, via a sophisticated network of couriers.

The charge filed in New York is independent of that in either indictment. The New York waiver of indictment merely provided that Neil Oser "is accused of knowingly and willfully failing to file a report as defined in Title 31, United States Code, Section 5316(b) when knowingly transporting and being about to transport monetary instruments of more than $10,000 at one time, to wit, approximately $790,000 in United States currency, from a place in the United States to a place outside the United States."

Although Oser's counsel argued before us that the New York conduct is part of the same course of conduct as alleged in the other indictments, there is nothing in the New York charges that refers to drugs or any drug conspiracy. Oser offers nothing on the record to show a connection. Indeed, if Oser had not already pled guilty to underreporting the currency carried in New York, the government would have been free to prosecute him for it after it secured a conviction on the Pennsylvania drug conspiracy, regardless of its inclusion as an overt act. See Garrett v. United States, 471 U.S. 773, 787 (1985) (separate offenses may be prosecuted separately without offending double jeopardy, even if one is a predicate act for another); United States v. Pungitore, 910 F.2d 1084, 1111 (3d Cir. 1990), cert.

12

<u>denied</u>, 500 U.S. 915 (1991).  Therefore, mere inclusion of a prior offense as an overt act in a conspiracy is not sufficient to constitute relevant conduct under § 1B1.1, and it was not taken into account by the district court in setting Oser's offense level.

Oser chose to pursue two courses of criminal conduct separately recognized by Congress: failure to file a truthful currency report in violation of 31 U.S.C. §§ 5316 and conspiracies to import heroin into the United States in violation of 21 U.S.C. § 963.  A concurrent sentence is not compelled by § 5G1.3(b) in this situation.

In light of the dissent's criticism of the government's actions, we note that the government could not have filed all the charges together in one proceeding.  By the time the government had a basis to indict Oser for the conspiracy to import heroin that was the subject of the Pennsylvania indictment, which was returned on July 29, 1992, Oser had already waived indictment and entered into a guilty plea on his June 19, 1991 conduct leading to the currency charge in New York.  On that charge, he waived indictment, pled guilty and entered into a plea agreement on November 26, 1991.  There is nothing in the record to compare this case with <u>United States v. McCormick</u>, 58 F.3d 874, 878 (2d Cir. 1995), where it appeared that the government deliberately seized upon a "perverse incentive" to try related crimes in separate jurisdictions.

Furthermore, the consolidation of the Pennsylvania charges and the New Jersey charges do not support the dissent's

13

suggestion that the underlying charges in all three cases were part of the same course of conduct. The consolidation was directed for disposition only after Oser pled guilty in Pennsylvania. The government has consistently argued that the New Jersey and Pennsylvania conspiracies were separate. Nonetheless, once Oser also pled guilty in the New Jersey case, the district court did give Oser the benefit of concurrent sentences for the Pennsylvania and New Jersey crimes.

Inasmuch as we conclude that subsection (b) does not apply to Oser's case, it follows that subsection (c) is the relevant guideline provision for determining whether his sentence should be imposed concurrently or consecutively to the remainder of his 28 month New York sentence. Under subsection (c), characterized as a "policy statement," the sentence for the offenses at issue, here the Pennsylvania and New Jersey conspiracies to import heroin, was to be imposed to run consecutively "to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense." U.S.S.G. § 5G1.3(c) (1994). Application Note 3 sets out a methodology "to assist the court in determining the appropriate sentence." U.S.S.G. § 3G1.3, comment. (n.3). At the time of Oser's sentencing that Note provided, in part,

To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which

14

sentences were being imposed at the same time.  Id. [3]

According to Oser, the district judge did not apply the appropriate methodology in sentencing him consecutively, and failed to state any reasons for avoiding the methodology as is required by United States v. Holifield, 53 F.3d 11, 17 (3d Cir. 1995).  We disagree.

The methodology outlined by the Application Note merely suggests that a judge first approximate the "total sentence" for a defendant as if the defendant were being sentenced for all his offenses at the same time; this "total sentence" then provides the judge with the maximum and minimum range for sentencing the defendant on the instant offense.  See U.S.S.G. § 5G1.3, comment. (n.3); United States v. Spiers, 82 F.3d 1274, 1278 (3d Cir. 1996).  As long as a consecutively imposed sentence falls within this maximum and minimum range, a judge has imposed a "reasonable incremental punishment" as described by the § 5G1.3(c).  U.S.S.G. § 561.3, comment. (n.3).  Beyond that limitation, the court

---

[3]   U.S.S.G. § 5G1.3(c) was amended effective November 1, 1995, and now provides the district court with even more discretion to fashion a sentence for a defendant subject to an undischarged term of imprisonment.  It states:

(Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially, concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(c) (1995).  The application note to this section was changed to correspond to the amendment.  See U.S.S.G. § 5G1.3(b), comment. (n.3) (1995).

15

retains broad discretion to choose the length and sequence of punishment.

The Commentary continues: "Generally, the court may achieve an appropriate sentence through its determination of an appropriate point within the applicable guideline range for the instant federal offense, combined with its determination of whether that sentence will run concurrently or consecutively to the undischarged term of imprisonment." Id.

The district court manifestly considered the guideline methodology in sentencing Oser for his part in the heroin importation conspiracies. The court determined on the record that a base offense level of 34 based on the quantity of heroin, with Oser's criminal history category II, produced an applicable guideline range of 168-210 months for the New Jersey offense, which the court deemed to be the appropriate total sentence for both the conspiracy offenses. The district judge stated that he was departing from the guideline range in Oser's case because of the government's submission of a § 5K1.1 letter. Transcript of Sentencing, January 26, 1995 at 62. The district court ultimately sentenced Oser to 9 years imprisonment to run consecutively to the ten month undischarged term of imprisonment remaining for his New York offense, for a total of 118 months, a term well below the guideline range. The court then imposed an additional one year term of imprisonment pursuant to U.S.S.G. § 2J1.7, making Oser's total sentence 130 months.

Though the district court did not expressly announce to Oser that its calculations were made following the guideline

16

methodology, the guidelines nowhere require such formality.  We have said that a court is free to abandon the penalty prescribed by the guideline's methodology as long as the court "indicates its reasons for imposing the penalty in such a way as to allow us to see that it has considered the methodology."  Spiers, 82 F.3d at 1275.

The court clearly explained why it was not imposing the conspiracy sentences to run concurrently with the 10 months remaining on the New York sentence.  It first stated:

> I do not think we are in the double jeopardy area as a constitutional matter, nor do I think I have authority to conclude, while it's just not good policy and, therefore, I won't do it, I think that Congress has been directive. It says there shall be an enhancement when you commit a crime when you're on release and I don't think I can avoid the impact of that unless I'm to conclude that the statute as applied here would be unconstitutional; it would be imposing a double punishment.  And I don't think it is.

Transcript of Sentencing, January 26, 1995 at 20.

Later, in sentencing, the district court stated as follows:

> I have concluded . . . in constructing the sentence that I will not follow the recommendation of the defense that I make this sentence concurrent with the sentence which Mr. Oser is now serving in New York.
> . . . I think it would not be harmonious with the proposition that an enhancement is to be made of the sentence to be imposed today for the reason that Mr. Oser went out while on release from the New York charges and engaged in independent criminal activity

17

> . . . to then make today's sentence
> concurrent with the New York
> sentence. [It] would not be
> harmonious with that enhancement.

Id. at 62-63.  The district court's explanation that a concurrent sentence would run against the policy of Congress and the Sentencing Guidelines in requiring that the sentence be enhanced if the crime was committed while on release elsewhere was a satisfactory basis for the use of a methodology different from that suggested by the Application Note.  We therefore reject Oser's claim of error in sentencing him to a term of imprisonment consecutive to that which he was serving in the New York charge.

### III.

Oser's final claim is that the district court erred in placing him in Criminal History Category II.  Under U.S.S.G. § 4A1.1, the district court is to "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month" (emphasis added).  Oser contends that the error was counting his New York conviction as a "prior sentence."  Repeating his earlier analysis, Oser argues that criminal history points should not have been assigned for the New York crime since that offense should be regarded as "part of the instant offense" under U.S.S.G. § 4A1.2(a)(1), and part of a "common scheme or plan" under United States v. Hallman, 23 F.3d 821, 825 (3d Cir.), cert. denied, 115 S.Ct. 216 (1994).

Oser did not raise this objection at his sentencing hearing, and agreed to a Criminal History Category II at that time.  Thus we review the court's determination only for plain

18

error.  See Fed.R.Crim.P. 52(b); United States v. Olano, 507 U.S. 725, 735–37, 113 S.Ct. 1770, 1778–78 (1993) ("plain error" must be particularly egregious and seriously affect the fairness, integrity or public reputation of judicial proceedings).

Under Application Note 1 to § 4A1.2(a), "prior sentence" means a sentence "imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense."  "Conduct that is part of the instant offense," in turn means, "conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)."  U.S.S.G. § 4A1.2(a)(2), comment. (n.1) (1994).  As explained above, Oser's currency underreporting offense played no part in the determination of his base offense level for the sentence on the heroin conspiracies offense; thus, the conduct for which he was previously sentenced was not the type of "Relevant Conduct" that would preclude a separate computation of criminal history points under § 4A1.2(a)(2).

Contrary to Oser's suggestion, our decision in Hallman, 23 F.3d at 825, does not require a contrary holding.  In Hallman, where the defendant was indicted in federal court for the offense of stealing mail in the form of blank checks, we concluded that the conduct underlying the defendant's state conviction for forgery was part of the same scheme and conduct as the federal offense and therefore could not count as a "prior sentence" under U.S.S.G. § 4A1.2(a)(1).  See id. at 826.  In that case, the two crimes were necessarily related; one would not attempt to steal blank checks without intending ultimately to commit forgery.

19

Here, there is nothing to show a relationship between the offense of underreporting the currency carried and the drug conspiracy offenses. Indeed, the New Jersey indictment to which Oser pled guilty alleged an agreement and acts that began after Oser's arrest for underreporting the currency charges. Therefore, the district judge did not plainly err in assessing Oser criminal history points for his New York offense pursuant to § 4A1.1(a).

## IV.

For the reasons set forth above, we will affirm the district court's judgment of conviction and sentence.

───────────────────────────

20

United States v. Neil Oser
No. 95-1107/1108


ROSENN, J., dissenting.

I believe that the appellant's indictment and conviction in the United States District Court for the Eastern District of New York on the charge of failing to report the transportation of cash abroad was part and parcel of the larger conspiracy for which he was indicted and sentenced in the Eastern District of Pennsylvania (for importing heroin into the United States and money laundering), as well as the conspiracy for which he was indicted in the District of New Jersey. Thus, the sentences for the Pennsylvania and New Jersey offenses should have been imposed under U.S.S.G. § 5G1.3(b) concurrently to the undischarged term of imprisonment that he was then serving under the New York indictment and sentence. I, therefore, respectfully dissent.


I.


21

The two conspiracies in Pennsylvania and New Jersey involved the alleged importation of heroin from Nigeria. (Maj. op. at 6) The arrest in New York at the JFK Airport on June 19, 1991 was for failure to report $790,000 in cash that he was carrying as he was about to board a flight for Lagos, Nigeria. Oser pled guilty to the charges in New York on November 26, 1991, and the court released him on bail pending the sentence which it imposed on July 16, 1993. The district court imposed sentence on Oser for the Pennsylvania and New Jersey offenses while he was serving time for the New York offense for failure to report the currency he was carrying. At the time of the Pennsylvania sentences, Oser had served 18 months of his 28 month New York sentence. The district court determined that his ten-year sentence on the Pennsylvania and New Jersey offenses should run consecutively to this sentence. Thus, Oser's time on this sentence would not even begin to run until he had served ten more months in prison. Oser argues now, as he did at sentencing, that this determination fails to consider the applicable U.S.S.G. guideline provision, § 5G1.3(b).

This Guideline provision assists the courts in sentencing a defendant who is subject to an undischarged term of imprisonment. There are three subparts which limit the court's discretion. Part (a) is applicable only when the instant offense was committed either while the defendant was serving a sentence, or after sentencing but before imprisonment, and mandates a consecutive sentence. The parties agree that this subpart is inapplicable, as Oser's subsequent offenses occurred between the

22

time of his guilty plea and his sentencing. Part (b) applies only if the undischarged term of imprisonment resulted from offenses that were fully taken into account in the determination of the offense level for the present offense, and mandates that the prison terms run concurrently. It provides that if subsection (a) does not apply and "the undischarged term of imprisonment resulting from offenses that have been fully taken into account in the determination of the offense level for the instant offenses the sentence for the instant offenses shall be imposed to run concurrently to the undischarged term of imprisonment." Part (c), called the policy statement, applies in all other cases, and permits the court to impose a consecutive, partially consecutive, or concurrent sentence as desired in order to achieve a reasonable incremental punishment for the instant offense.

I believe that the record establishes that Oser's New York conduct was taken into account. Under a reading of Application note 2 to § 5G1.3, subsection (b) could include federal charges in other jurisdictions for the same criminal conduct, or for different criminal charges that were part of the same course of conduct. Here, the charges in all three states stem from one ongoing course of criminal conduct concerning a large-scale conspiracy to import heroin.

The Government argues that the Pennsylvania and New Jersey indictments, although they involve a continuation of Oser's drug smuggling activities, cover different time periods and different co-conspirators. Therefore, the Government claims,

they are different courses of conduct.  This, it seems, is contradicted by their consolidation and by the concurrent sentences imposed for the Pennsylvania and New Jersey charges.

More importantly, the conduct for which Oser was sentenced in New York, failure to file a currency report, is cited as an overt act of the conspiracy charged in Pennsylvania.  The Government has thus acknowledged that the act is part of the same course of conduct.  Because it has used this act to charge Oser with conspiracy, it is estopped from arguing on appeal that the act is wholly irrelevant to the conspiracies charges to which he pled guilty.  The Government has, in effect, recognized that the New York offense is part of the same course of conduct as the present crime, by including it as an overt act of the conspiracy described in the present indictment.  This is supported by the response of Seth Weber, Assistant United States Attorney, who at sentencing of Oser in New York City made this statement:

"And when you talk about these criminal charges
        being an aberration for Mr. Oser we
        may be missing the boat here
        because we're dealing with criminal
        conduct that spanned two years,
        from 1991 through 1993, that we
        know of.  1991 when he attempted to
        take $800,000 in cash out of the
        country without reporting it
        knowing that it was a result of
        drug proceeds.  That's what started
        this ball rolling for Mr. Oser."


Therefore, subsection (b) of § 5G1.3 applies.

The point I make is not only of importance to Oser but to the federal criminal justice system generally.  It is not unusual for some prosecutors to split up a single conspiracy and

24

attempt to charge several discrete conspiracies, with indictments in different jurisdictions, and thereby obtain multiple sentences.  In United States v. McCormick, 58 F.3d 874 (2d Cir. 1995), the defendant was sentenced in two district courts in the Second Circuit for separate frauds against two separate banks, each part of an ongoing fraud conspiracy.  The court considering the second indictment dismissed 31 of the 41 counts, in recognition of possible double jeopardy issues, but permitted prosecution of the other ten counts.  It then sentenced the defendant to serve his sentence consecutive to the preceding sentence.[4]  Although the Second Circuit affirmed this decision, it noted:

[T]his result unfairly punishes McCormick for events to a real extent outside his control, namely, his prosecution in two separate fora for a single pattern of fraudulent activity.  It is acknowledged by the Government that if McCormick had been subject to a single prosecution for his crimes, he would have received, at most, a single 46-month term of imprisonment.  That he is now subject to an additional, consecutive 35-month term creates a perverse incentive for prosecutors.  In order to maximize the sentences received by defendants, prosecutors can, where possible, try defendants in multiple jurisdictions for different but related crimes.  As mentioned above, we are bound by the Guidelines and the law of this circuit to reach the result in this case.  In our view, however, this problem deserves a renewed, close

---

[4]The district court in that case specifically noted the existence of U.S.S.G. § 5G1.3, and determined that this was a suitable incremental punishment.

25

> examination by the Sentencing
> Commission.

McCormick, at 878.

The effect of the prosecutions in the three jurisdictions in the instant case is to maximize Oser's sentence for what is, in effect, the same course of conduct. This is impermissible under the Guidelines, and unreasonable.

Prosecutors have a great deal of discretion in the way they choose to frame charges against a defendant. In this case, rather than limit themselves to Oser's substantive offenses, the prosecutors set out to charge him with conspiracy, and cited his substantive offenses as overt acts in furtherance of that conspiracy. This is well within prosecutorial discretion. However, having chosen to frame their charges in such a fashion, they are also bound by its limitations. Oser's failure to file a currency report is either a substantive offense in New York, or an overt act in furtherance of the Pennsylvania conspiracy. However, it borders on double jeopardy to permit prosecutors to have it both ways, and for the court to sentence Oser twice for conduct essentially part of the conspiracy for which he is being separately sentenced. The gravamen of Oser's concern is not that he was indicted in three jurisdictions, but having been indicted in New York for conduct that was in furtherance of the overall conspiracy, the ultimate sentence imposed in Pennsylvania should have been concurrent to the sentence remaining to be served under the New York indictment, and not consecutive.

26

Therefore, when a defendant is convicted of conspiracy in one jurisdiction and the evidence includes criminal conduct for which he has been previously prosecuted and convicted in another federal jurisdiction, or he has been previously prosecuted and convicted for different criminal charges that were part of the same conspiratorial course of conduct, the sentence imposed in the later conviction must be concurrent with the first sentence.

The district court in Pennsylvania, therefore, should have applied U.S.S.G. § 5G1.3(b) in sentencing Oser and have the sentence it imposed run concurrently with the portion of the New York sentence which had not yet been served.

Accordingly, I respectfully dissent.