**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3288
_____

UNITED STATES OF AMERICA

v.

ANTHONY PRYOR,
also known as ANT

Anthony Pryor,
            Appellant
_____

On Appeal from the District Court for the Western District of Pennsylvania
(D.C. No. 14-cr-00270-007)
District Judge: Honorable Reggie B. Walton
_____

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2019
_____


Before: AMBRO, RESTREPO, and GREENBERG, *Circuit Judges*.

(Filed May 15, 2019)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Following a bench trial, the District Court convicted Anthony Pryor of conspiracy to distribute and possess with intent to distribute heroin. Pryor was sentenced to 140 months in prison, followed by ten years of supervised release, to run consecutively to a previously imposed state sentence. Pryor appeals his judgment of conviction and sentence. We will affirm.

I.

Because we write primarily for the parties, we only set forth the facts and history relevant to this decision. On December 9, 2014, Anthony Pryor and eleven others were indicted on charges that they conspired to distribute heroin. Pryor waived his right to a jury and was tried and convicted by the District Court. Pryor's conviction arose from his association with Hardcore Entertainment, a heroin distribution ring located in the Pittsburgh area. When Hardcore members bought heroin in bulk, they would resell it to lower-level associates for distribution. Anthony Pryor was one of these distributors. Pryor was the cousin of Donte Yarbough, a mid-level dealer in the Hardcore hierarchy with a substantial leadership role.

Although only a lower-level associate, Pryor had significant dealings with Hardcore. Multiple co-conspirators testified that they socialized with Pryor on different occasions. Pryor had also registered several phone numbers in his name for Yarbough's use. Corey Thompson, a high ranking member of Hardcore, testified that Pryor had purchased a total of 100 bricks of heroin from him, and that Pryor had also purchased heroin from other members of the organization. Thompson testified that these sales

2

occurred over a period of six months to a year. Intercepted calls and text messages also showed that Pryor would buy heroin and then offer feedback to Hardcore members on its quality.

On one occasion, a confidential informant arranged for Yarbough to sell heroin as part of a controlled buy. Yarbough instructed Pryor to steal from the informant by collecting the money and handing him a package that did not actually contain heroin. Pryor completed the theft, and Yarbough instructed him to keep part of the cash. Pryor then registered a new phone number for Yarbough.

The District Court found that the above evidence was sufficient to show that Pryor was a member of the charged conspiracy. As noted, Pryor was sentenced to 140 months in prison, which was a significant departure from his guideline range of 262 to 327 months.

## II.

Pryor appeals his judgement of conviction and sentence.  The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

Pryor first challenges the District Court's finding that he was a member of the charged conspiracy. He argues that he did not join the conspiracy and that his involvement was limited to a buyer-seller relationship.

Under 21 U.S.C. § 846, the government must establish: "(1) a shared unity of purpose between the alleged conspirators, (2) an intent to achieve a common goal, and (3)

3

an agreement to work together toward that goal." *United States v. Bailey*, 840 F.3d 99, 108 (3d Cir. 2016) (citing *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). The government must prove that a defendant was actually a member of the conspiracy—involvement limited to a "buyer-seller" relationship is insufficient. *Id*. Factors that demonstrate when a defendant was part of a conspiracy, rather than having a limited buyer-seller role, include: "the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust." *See Gibbs*, 190 F.3d at 199; *see also Bailey*, 840 F.3d at 108.

The standard of review to a sufficiency-of-the-evidence challenge is highly deferential. *Bailey*, 840 F.3d at 109. "We review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (internal quotation marks omitted). When facts support conflicting inferences, we presume that the factfinder resolved them in favor of the prosecution and defer to that resolution. *Bailey*, 840 F.3d at 109.

The evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Pryor was a member of the conspiracy. Pryor had been involved in the conspiracy for at least six months to a year, and bought heroin from most of its members. He offered feedback on the heroin to high-ranking members of the conspiracy, showing that he had a stake in the quality of the heroin that was purchased.

Pryor's interactions with Donte Yarbough also show that he joined the conspiracy. Pryor registered Yarbough's phone numbers in his own name so that Yarbough, who had a leadership role in Hardcore, could more effectively evade law enforcement. His agreement with Yarbough to steal money from a confidential informant and deliver a false heroin package establishes that there was both a unity of purpose and an intent to achieve the common goal. *See Bailey*, 840 F.3d at 108. Following the theft, Pryor changed Yarbough's phone number, presumably so that law enforcement couldn't connect the theft to Hardcore. This evidence was sufficient to allow the District Court to conclude that Pryor was a member of the conspiracy.

The evidence is also sufficient to show that Pryor's involvement exceeded a buyer-seller relationship. Thompson testified that Pryor had bought more than 100 bricks of heroin from him over a period of six months to a year. Pryor would typically request the same amount of heroin, and the transactions were so standardized that the type of drug or the cost was never actually discussed. Pryor also offered feedback on the quality of the heroin. *See Gibbs*, 190 F.3d at 201 (considering advice on commercial aspects of the business as evidence of exceeding a buyer-seller relationship). Further, Thompson occasionally loaned or fronted bricks of heroin to Pryor. This evidence, along with the theft, could have allowed a factfinder to establish the following: there was a lengthy relationship between Pryor and Hardcore, an established method of payment, standardized transactions, and a mutual level of trust between Pryor, Thompson, and Yarbough. *See Gibbs*, 190 F.3d at 199. For these reasons, the evidence was sufficient for the District Court to conclude that Pryor was a member of the conspiracy.

IV.

Pryor next challenges the District Court's decision to allow his sentence to run consecutively to a state sentence for possession with intent to distribute heroin.

A district court has discretion to order a federal sentence to run consecutively to an undischarged state sentence. 18 U.S.C. § 3584(a); *see also Setser v. United States*, 566 U.S. 231, 235-36 (2012) (holding that 18 U.S.C. § 3584 applies to state sentences). In determining whether a federal sentence will run consecutively or concurrently, 18 U.S.C. § 3584(b) requires the sentencing court to consider the factors set forth in 18 U.S.C. § 3553(a). One factor to consider are the sentencing guidelines and applicable policy statements. Section 5G1.3(b)(1)-(2) states that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction[,]" the sentence imposed shall run concurrently to the undischarged sentence with credit for time served. For this purpose, conduct can be relevant if it is part of the same criminal undertaking. *See United States v. Oser*, 107 F.3d 1080, 1084 (3d Cir. 1997). Despite the command of "shall," the district court retains its discretion to impose a consecutive sentence because the guidelines are advisory only. *See United States v. Arrelucea-Zamudio*, 581 F.3d 142, 146 (3d Cir. 2009); *United States v. Booker*, 543 U.S. 220, 246 (2005).

At the time of sentencing, Pryor was subject to an undischarged state prison sentence of three to six years for possession with intent to distribute heroin. This crime was committed in March 2010. Pryor argues that this conduct was relevant to his heroin conspiracy conviction and that the District Court erred in ordering his sentence to run

consecutively. We review sentencing decisions for procedural and substantive reasonableness under an abuse-of-discretion standard. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). While interpretations of applicable sentencing guidelines are reviewed *de novo*, the Court's application of law to facts is reviewed for abuse of discretion. *United States v. Kluger*, 722 F.3d 549, 555 (3d. Cir. 2013).

We cannot say that the Court abused its discretion when it ordered Pryor's sentence to run consecutively to his undischarged state sentence. When determining whether the sentence would run consecutively, it was only required to consider the factors set forth in section 3553(a). *See* 18 U.S.C. § 3584. In his presentencing memorandum, Pryor specifically requested a concurrent sentence and directed the Court to U.S.S.G. § 5G1.3(b). While it did not specifically mention section 5G1.3(b) at sentencing, it read his presentence memorandum and considered his argument. Based on this, the Court ordered his sentence to run consecutively because this conspiracy was a new crime that was separate from his March 2010 conviction. This was sufficient consideration, and we are unwilling to say that more was required. Pryor was arrested in March 2010 for possession with intent to distribute. Despite investigating Hardcore Entertainment since 2010, investigators first learned of Pryor's involvement through a Title III wiretap in August 2011. Further, the Court carefully considered the section 3553(a) factors, and made a significant downward departure from the minimum guideline range. For this reason, it did not abuse its discretion.

\*　　\*　　\*

For the reasons stated, we will affirm Pryor's judgment of conviction and sentence.