**UNITED STATES of America, Appellee,**

v.

**Carlos Julio REYES, Appellant.**

**No. 90–5401.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 29, 1990.

Decided April 11, 1991.

As Amended May 15, 1991.

Rehearing and Rehearing In Banc
Denied May 20, 1991.

William A. Fetterhoff (argued), Harrisburg, Pa., for appellant.

James J. West, U.S. Atty., Kim Douglas Daniel (argued), Asst. U.S. Atty., Harrisburg, Pa., for appellee.

Before BECKER, NYGAARD and ALITO, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

Carlos Julio Reyes (Reyes) and two co-defendants were indicted in 1989 by a federal grand jury in the Middle District of Pennsylvania. Reyes was named in three counts. Count I charged Reyes and his co-defendants with a conspiracy having three objectives: distribution of cocaine, in violation of 21 U.S.C. § 841(a); distribution of cocaine to persons under the age of 21, in violation of 21 U.S.C. § 845(a); and distribution of cocaine within 1,000 feet of a school, in violation of 21 U.S.C. § 845(a). Reyes was also charged with the substantive offense of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count

VI), and with using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count VII). After a jury trial, Reyes was convicted on all counts.

At Reyes' sentencing hearing, the judge found that the conspiracy involved more than five kilograms of cocaine and that Reyes was an organizer or leader of the conspiracy. Based on these findings, Reyes was sentenced to concurrent sentences of 250 months of incarceration on Counts I and VI. Reyes was sentenced to a consecutive term of 60 months of incarceration on Count VII.

On appeal, Reyes advances four arguments. First, he contends that the conspiracy count (Count I) charged three separate offenses and was therefore defective. Second, he argues that the evidence proved the existence of two separate conspiracies, not the single conspiracy charged in the indictment. Third, he asserts that the evidence was insufficient to support a conviction for using or carrying a firearm during and in relation to a drug trafficking offense. Finally, he asserts that there was insufficient evidence in the record to sustain the findings of the sentencing judge that the conspiracy involved more than five kilograms of cocaine and that he was an organizer or leader of the conspiracy. We reject Reyes' arguments concerning the validity of his conviction, but we vacate the sentence imposed by the district court and remand for further sentencing proceedings.

## I.

■ Reyes contends that the conspiracy count of the indictment[1] is defective because it charges three separate offenses.[2] While Reyes is correct that each offense charged in an indictment must be set out in a separate count (Fed.R.Crim.P.

8(a); see United States v. Pungitore, 910 F.2d 1084, 1135 (3d Cir.1990); United States v. Starks, 515 F.2d 112, 116 (3d Cir.1975)), the conspiracy count of Reyes' indictment does not charge three separate offenses but a single offense, i.e., a conspiracy having multiple objectives. It is well established that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous." Braverman v. United States, 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942); see also United States v. Bucey, 876 F.2d 1297, 1312 (7th Cir.), cert. denied, — U.S. —, 110 S.Ct. 565, 107 L.Ed.2d 560 (1989). The conspiracy is one crime " 'however diverse its objectives.' " Braverman, 317 U.S. at 54, 63 S.Ct. at 102; see also United States v. Daily, 921 F.2d 994, 1001–01 (10th Cir. 1990); United States v. Sullivan, 919 F.2d 1403, 1435 n. 53 (10th Cir.1990).

## II.

■ Reyes next contends that the trial evidence was insufficient to prove the single conspiracy charged in Count I. Specifically, Reyes maintains that the evidence did not connect the conspiracy in which he joined with the evidence of drug distribution near two schools. In assessing Reyes' argument, we must determine whether the record, viewed in the light most favorable to the government, contains substantial evidence to support the jury's verdict. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); United States v. Kelly, 892 F.2d 255, 258 (3d Cir. 1989), cert. denied, — U.S. —, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990); United States v. Furst, 886 F.2d 558, 565 (3d Cir. 1989), cert. denied, — U.S. —, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990). Applying this standard, we find no merit in Reyes' argument.

---

1. Count I of the Indictment states in pertinent part:

 Between on or about October 1, 1988 through November 28, 1989 ... Carlos Julio Reyes ... did knowingly and intentionally combine, agree, conspire, and confederate with various individuals whose names are both known and unknown to the grand jury to distribute, and possess with intent to distribute, in excess of 5 kilograms of cocaine in violation of 21 U.S.C. Section 841(a), to distribute cocaine to a person under 21 years of age in violation of 21

U.S.C. Section 845(a), and to distribute and possess with intent to distribute, cocaine within 1,000 feet of the real property comprising public and private schools in violation of 21 U.S.C. Section 845(a).... All in violation of Title 21 United States Code, Section 846.

2. Whether Count I of the indictment is defective in form requires the application of a legal precept and is therefore reviewed under a plenary standard. Universal Minerals v. C.A. Hughes & Co., 669 F.2d 98, 101–02 (3d Cir.1981).

In *Blumenthal v. United States,* 332 U.S. 539, 559, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947), the Supreme Court held that a single conspiracy had been proved because "[a]ll [defendants] knew of and joined in the overriding scheme.... All by reason of their knowledge of the plan's general scope, if not its exact limits, sought a common end...." This circuit has held that a single conspiracy is proved when there is "evidence of a large general scheme, and of aid given by some conspirators to others in aid of that scheme." *United States v. Kenny,* 462 F.2d 1205, 1216 (3d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); *see United States v. Theodoropoulos,* 866 F.2d 587, 593 (3d Cir. 1989); *United States v. Adams,* 759 F.2d 1099, 1109–10 (3d Cir.), *cert. denied,* 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985).

We have reviewed the record, and we find sufficient evidence to support a finding of a single conspiracy that included the distribution of drugs near the schools. For example, there was evidence that Reyes and Juan Basilio Montilla–Davila were partners in the distribution of drugs, and the evidence strongly tied Montilla–Davila to the drug distribution near the schools. In addition, there was evidence that Reyes conspired with Jorge Porte, who was also closely tied to the activity near the schools. Taken together, the evidence was sufficient to permit the jury to infer that the drug distribution near the schools and the other overt acts were all part of the large general scheme in which Reyes joined.

### III.

 Reyes asserts that there is insufficient evidence to sustain his conviction for "us[ing] or carry[ing]" a firearm "during and in relation to ... a drug trafficking offense," in violation of 18 U.S.C. § 924(c)(1). We cannot agree.[3]

The underlying facts giving rise to the firearms charge are as follows: Just prior to his arrest, Reyes was observed on a street in a housing project in York, Pennsylvania, where Reyes had previously delivered drugs and had received cash in return. Reyes was observed by police surveillance opening the trunk of a car with a key and putting what appeared to be a white bag inside. At the time of Reyes' arrest several minutes later, a .22 magnum bullet was found in his pants pocket, and a key fitting the trunk was found wedged inside the front passenger door panel. After the car was towed to a city lot and a search warrant was obtained, the trunk was searched. A gym bag was found inside the trunk. Within the bag, the police found a white pullover shirt with $9,020 cash in a sleeve. Also inside the gym bag, only inches away from the shirt containing the cash, was a .22 caliber pistol. The bullet found in Reyes' pants pocket fit the .22 caliber pistol.

Reyes contends that the circumstances surrounding the presence of the pistol would not permit a jury to conclude that the pistol was being "used" or "carried" within the meaning of 18 U.S.C. § 924(c)(1). He asserts that conviction under that statute necessitates evidence of more than mere possession, and he contends that the evidence presented in this case showed nothing more than mere possession because there was no proof that the pistol had been fired or used to threaten anyone during the course of the conspiracy.

Reyes relies on *United States v. Theodoropoulos,* 866 F.2d 587 (3d Cir.1989), in which we addressed the circumstances in which possession of a firearm may constitute use "during and in relation to a crime of violence or drug trafficking crime" under 18 U.S.C. § 924(c). Adopting the test formulated in *United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988), we held in essence that such a violation may be established by showing that the defendant intended to have the firearm available for use or possible use during a crime of violence or drug trafficking crime and that the firearm was placed in a spot

---

**3.** This court must affirm the conviction if the evidence, when viewed in the light most favorable to the verdict, is sufficient to prove guilt beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. at 80, 62 S.Ct. at 469; *United States v. Gonzalez,* 918 F.2d 1129, 1132 (3d Cir. 1990).

where it was readily accessible at that time.[4]

This test is satisfied in the present case. Based upon the evidence noted above, the jury could have reasonably concluded that Reyes had collected $9,020 in drug proceeds; that he was transporting those proceeds at the time of his arrest; that this activity was in furtherance of the drug conspiracy; that Reyes intended to have the firearm available for use or possible use; and that the pistol's location, within inches of the drug proceeds, made it readily accessible to Reyes while he was engaged in activities furthering the conspiracy. Thus, we hold that the evidence was sufficient to prove illegal use in violation of 18 U.S.C. § 924(c).

This conclusion is completely consistent with the decision in *Theodoropoulos.* There, four weapons were found in an apartment that "the jury could have believed was a staging and storing area for drugs and drug paraphernalia." 866 F.2d at 596. A loaded shotgun was found in plain view inside the apartment, and two handguns and a disassembled machine pistol were found in a trash can on the porch. The court held that the circumstances were sufficient to prove a violation with respect to the shotgun because it was found "in plain sight . . . where it was readily accessible to the occupants" of the apartment. *Id.* at 597. But the court concluded that the circumstances relating to the three weapons in the trash can on the porch were

insufficient because the circumstances merely showed that they were available "nearby." *Id.*

The circumstances relating to the pistol in the present case are distinguishable from those relating to the three weapons in *Theodoropoulos* that were found in the trash can on the porch. Here, the evidence clearly showed that the pistol was readily accessible to Reyes while he was performing acts in furtherance of the drug conspiracy. In *Theodoropoulos,* the evidence merely showed that the three weapons in question were located near the interior of the apartment. The evidence did not establish their proximity to the defendant; nor did it show that the defendant had easy means of access to the weapons during drug-related transactions. We are convinced that the guns on the porch in *Theodoropoulos* and the pistol in the trunk in this case fall on opposite sides of the statutory boundary.[5]

## IV.

Finally, Reyes contends that there is insufficient evidence to support the sentencing court's finding that the conspiracy involved more than five kilograms of cocaine and that Reyes was a leader or organizer of the conspiracy. These findings substantially affected the length of Reyes' sentence. Under 21 U.S.C. §§ 841(b)(1)(A)(ii) (IV) and 846, the finding that the conspiracy involved more than five kilograms of

---

4. The exact language used in *Feliz–Cordero* was as follows:

 [I]n order for possession of a firearm to come within the "uses" provision of section 924(c), one of the following is required: i) Proof of a transaction in which the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction; or, ii) The circumstances surrounding the presence of a firearm in a place where drug transactions take place suggest that it was strategically located so as to be quickly and easily available for use during such a transaction. *Feliz–Cordero,* 859 F.2d at 254.

5. The evidence regarding the gun in this case would be more analogous to the evidence in *Theodoropoulos* regarding the guns on the porch

if the facts here showed simply that Reyes travelled in the car in furtherance of the drug conspiracy and that a gun was found in the car's trunk. If that were the case, it could be argued more persuasively that Reyes merely possessed the gun or that it was merely available nearby. Here, however, the evidence showed that Reyes had on his person at the time of arrest both a key to the trunk and a bullet for the gun and that minutes before his arrest he stood beside the open trunk and placed a white object (which the jury could have reasonably inferred was the white shirt containing drug proceeds) in the same gym bag with the gun. These facts satisfy the test that we adopted in *Theodoropoulos* (866 F.2d at 597) and are therefore sufficient to show that Reyes "use[d] or carrie[d] a firearm" "during and in relation to . . . a drug trafficking offense" (18 U.S.C. § 924(c)(1)).

cocaine mandated a minimum sentence of 10 years' imprisonment. This finding also affected the calculation of Reyes' sentence under the Federal Sentencing Guidelines ("FSG"), as did the finding that he was a leader or organizer of the conspiracy.[6] With respect to these sentencing adjustments, the government bore the burden of persuasion by a preponderance of the evidence. *United States v. McDowell,* 888 F.2d 285, 290–91 (3d Cir.1989). We review the sentencing judge's findings to determine whether they were clearly erroneous. *Id.* at 291–92; 18 U.S.C. § 3742(e).

■ In the present case, we find substantial evidence that Reyes was a leader or organizer of the conspiracy, but the finding regarding the quantity of drugs cannot be sustained based on the evidence cited by the sentencing court. The sentencing judge had presided over Reyes' trial and the separate trial of co-conspirator Jorge Porte and therefore undoubtedly possessed a detailed understanding of the evidence regarding the conspiracy. Unfortunately, the judge provided only a brief explanation of the basis for his finding with respect to the quantity of drugs. Disclaiming any reliance on evidence admitted in Porte's separate trial and noting that the conspiracy lasted 13 months, the court stated that the testimony of a single prosecution witness, Patricia Cunningham, was sufficient to establish that the conspiracy involved more than five kilograms. We have carefully examined Cunningham's trial testimony and conclude, as the government acknowledged in post-argument briefing (see Supplemental Brief of Appellee at 8–9),

that Cunningham's testimony[7] by itself cannot support the court's finding.

■ In finding that the conspiracy involved more than five kilograms, the only other fact cited by the sentencing judge was the conspiracy's 13–month duration, but this fact alone clearly cannot support the court's finding. We note, however, that the length of a drug conspiracy together with other evidence may provide a basis for a satisfactory estimate of the quantity of drugs involved. *See* FSG Section 2D1.4, Application Note 2 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance...."); *see also United States v. Gonzalez,* 918 F.2d 1129, 1139 n. 10 (3d Cir.1990). In the present case, for example, there was testimony regarding the quantity of drugs sold by particular dealers during particular periods (*see, e.g.,* App. at 28–31, 189–96, 264–265, 267). Although we have not attempted to estimate the total quantity of drugs involved based on this or any other similar evidence, we do not preclude the sentencing court from making any such reasonable calculation on remand.

The government contends that even if the district court's finding cannot be sustained based on Cunningham's testimony, that finding can be affirmed based upon Benigno Del Orbe's testimony at Porte's separate trial that at least six kilograms of cocaine were delivered to the conspirators.[8] At Reyes' sentencing, his attorney objected to consideration of this testimony because it occurred at a separate trial, and the district court did not rule on whether the

---

**6.** The sentencing court's finding that the conspiracy involved in excess of five kilograms of cocaine resulted in a case offense level of 32 pursuant to FSG § 2D1.1(c)(6). Four points were added to this offense level pursuant to FSG § 3B1.1(a) as a result of the sentencing court's finding that Reyes was a leader or organizer of a criminal activity involving five or more participants. Two additional points were added to the offense level for using minors and protected locations. This generated a total offense level of 38.

**7.** On appeal the Government contends that, in addition to Cunningham's trial testimony, this court should consider information recorded in a Drug Enforcement Agency report regarding an interview with Cunningham. The salient pas-

sage from that report, which is not part of the official record, states that "Cunningham ... travel[ed] to New York to pick up 3 kilograms of cocaine from a Dominican male named JOSE and returned to York, Pennsylvania and delivered the three kilograms to another JOSE." Reyes contends, however, that the government has not linked this particular trip to the conspiracy for which he was convicted. On the present record, the sentence imposed by the district court cannot be sustained based on the DEA report. On remand, the government will have the opportunity to address its argument to the district court.

**8.** Del Orbe also testified at Reyes' trial, but in that testimony did not specify the quantity of drugs delivered.

testimony could properly be considered in sentencing Reyes because the court erroneously believed that Cunningham's testimony was sufficient to prove that the conspiracy involved more than five kilograms of cocaine.

 We will not determine in the first instance whether Del Orbe's testimony at the Porte trial establishes that the conspiracy involved more than five kilograms, but we will remand for the sentencing judge to address that question. We note, however, that no rule of law bars a sentencing court from considering pertinent testimony simply because it was given at a separate proceeding. *See United States v. Torres,* 926 F.2d 321, 324 (3d Cir.1991). However, such testimony, like all evidence considered at sentencing must meet certain standards of reliability. *United States v. Baylin,* 696 F.2d 1030, 1040 (3d Cir.1982) (evidence need only possess "some minimum indicium of reliability); *United States v. Kikumura,* 918 F.2d 1084, 1103 (3rd Cir.1990) ("reasonable trustworthiness" may be required in exceptional circumstances). Moreover, the defendant must be given a reasonable opportunity to respond to the evidence. Fed. R.Crim.P. 32(c)(3).

### V.

In sum, we will affirm Reyes' conviction on all counts but will vacate his sentence and remand for resentencing.