

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-10-1997

# USA v. Knobloch

Precedential or Non-Precedential:

Docket
96-3022

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"USA v. Knobloch" (1997). *1997 Decisions.* Paper 272.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/272

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 10, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-3022

UNITED STATES OF AMERICA

v.

PAUL KNOBLOCH
Appellant

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. No. 95-00031E)

Argued October 14, 1997

BEFORE: STAPLETON, ALITO, and ROSENN,
Circuit Judges

(Opinion Filed December 10, 1997)

        Frederick W. Thieman
        U.S. Attorney
        Paul J. Brysh (Argued)
        Bonnie R. Schleuter
        Office of the U.S. Attorney
        633 U.S. Post Office & Courthouse
        Pittsburgh, PA 15219
        Attorneys for Appellee




        Alan Ellis
        Peter Goldberger
        James H. Feldman, Jr. (Argued)
        Law Offices of Alan Ellis
        50 Rittenhouse Place
        Ardmore, PA 19003
        Attorneys for Appellant

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Paul Knobloch challenges his judgment of conviction and
sentence on three grounds. First, he insists that his plea to
Count 5 of the indictment was not voluntary, knowing, and
intelligent because the district court, in the course of the

plea colloquy, misdescribed the elements of the offense charged. In addition, he contends that the court erred by imposing a role in the offense enhancement to his sentence based on testimonial evidence from a related trial, to which he had no reasonable opportunity to respond. Finally, he asserts that the court misapplied the Sentencing Guidelines by impermissibly enhancing his sentence for possession of a dangerous weapon.

Because Knobloch failed to call these alleged errors to the attention of the district court, we review for plain error only. While the district court committed an apparently inadvertent error in describing the elements of the offense charged in Count 5, we will not disturb Knobloch's guilty plea to that count because he does not claim that he would have pleaded differently had the error not occurred. Moreover, we find no fault in the court's consideration of relevant testimony from another related trial. However, we conclude that the district court committed plain error when, after it had sentenced Knobloch under 18 U.S.C. S 924(c) for carrying a firearm during and in relation to a drug crime, it enhanced Knobloch's sentence under U.S.S.G. S 2D1.1 based on his possession of other firearms.

I. Background

Paul Knobloch and Jason Smith initiated a marijuana trafficking operation. In the course of the conspiracy, they

received a 1000-pound crate of marijuana, which they stored in Smith's home. Sometime later, Knobloch and Jeffrey Davis executed a plan to steal approximately 300 pounds of this stash. While Knobloch diverted Smith at a nightclub, Davis used a van borrowed from Knobloch's father to steal the marijuana and transport it to a storage locker. Over the next five months, Knobloch, Davis, and Daniel Goodwin sold approximately half of this marijuana and divided the proceeds.

Knobloch was also contemporaneously involved in the distribution of anabolic steroids. At one point, Knobloch sold Davis a bag of steroids. By that time, however, Davis was cooperating with the authorities, and Knobloch was arrested at the scene of the transfer immediately after the exchange. Police seized a loaded Glock 19, 9-mm handgun from Knobloch at the time of the arrest. When they later searched Knobloch's apartment, they found two other handguns--a Spectre .45 with a laser sight and a TEC-9, 9-mm semi-automatic--and ammunition clips in close proximity to a large carton of anabolic steroids.

Knobloch was subsequently indicted on six counts.
Counts 1, 4, and 5 charged him, respectively, with
conspiracy to distribute marijuana, distribution of anabolic
steroids to Davis, and using and carrying the Glock 19,
9-mm handgun during and in relation to the distribution of
anabolic steroids to Davis. Two of the other three counts,
Counts 2 and 3, charged Knobloch, respectively, with
possession with intent to distribute the anabolic steroids in
his apartment, and with use of the Spectre .45 and the
TEC-9 during and in relation to the possession of those
steroids.

In a plea agreement, Knobloch agreed to plead guilty to
Counts 1, 4, and 5. He further "acknowledge[d] his
responsibility for the conduct charged in Counts Two, Three
and Six . . . and stipulate[d] that the conduct charged in
those counts may be considered by . . . the District Court
in imposing sentence." J.A. at 14-15. In exchange, the U.S.
Attorney agreed to dismiss Counts 2, 3, and 6 after the
imposition of sentence.

As contemplated by the plea agreement, Knobloch

changed his original not-guilty pleas to Counts 1, 4, and 5.
At the change of plea hearing, the court asked Knobloch a
number of questions to ensure that his plea was voluntary,
knowing, and intelligent. The court informed Knobloch that
Count 5 of the indictment alleged that he "did knowingly
use and carry a firearm, that is, a Glock 19, .9[sic]
millimeter pistol, during and in relation to a drug
trafficking crime" in violation of 18 U.S.C. S 924(c)(1).1 It
then asked Knobloch, "Do you understand the nature of the
charges that I just read to you, sir?" J.A. at 26. Knobloch
responded, "Yes, I do." Id. A moment later, however, the
court incorrectly described the elements of this crime. It
advised Knobloch:

> [I]n order to for the crime of use of a firearm in relation
> to a drug trafficking offense to be established, the
> Government must prove all of these essential elements
> beyond a reasonable doubt: That the Defendant
> knowingly used or carried a firearm as charged in the
> indictment, that the Defendant did so during and/or in
> relation to a drug trafficking crime.

J.A. at 28 (emphasis added). The emphasized portion
incorrectly implied that the government might secure a
conviction on a showing that Knobloch used or carried a
firearm either during or in relation to the crime, whereas

the statute requires use or carrying both during and in relation to the crime. No one objected to this description of the elements of the offense, and when asked if he understood the necessary elements of Count 5, Knobloch responded, "Yes, I do." Id. The court accepted Knobloch's plea.

In preparation for sentencing, the government and Knobloch filed objections to the recommendations in the Presentence Report. Two of the government's objections are relevant to this appeal. First, it requested a two-level enhancement under U.S.S.G. S 3B1.1(c) for Knobloch's

_____

1. 18 U.S.C. S 924(c)(1) provides in relevant part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall . . . be sentenced to imprisonment for five years . . . .

4

"supervisory role" and his "organizational position and leadership of Goodwin and Davis." J.A. at 49. Second, the government argued for another two-level enhancement under U.S.S.G. S 2D1.1(b)(1) based on Knobloch's "possessing the Spectre .45 and TEC-9 assault pistols in connection with the cache of steroids in his apartment." J.A. at 47. It contended that such an enhancement was appropriate so long as the court "decide[d], by a preponderance of the evidence, that the two firearms . . . which were found on top of the carton full of steroids [in the apartment] were probably connected to the underlying offense of possessing steroids with intent to distribute them," i.e., the underlying offense charged in Count 2. J.A. at 47-48. The Probation office disagreed with the dangerous weapon enhancement, and it referred specifically to Application Note 2 to S 2K2.4, the provision upon which Knobloch relies before us. It supported the enhancement for Knobloch's role in the marijuana conspiracy.

At the sentencing hearing, the prosecutor declared that "it is clear that it was Knobloch who orchestrated the theft of the marijuana, and he clearly supervised Davis and Goodwin in the theft of the marijuana and then the later distribution." J.A. at 75. In support of this assertion, the prosecutor noted that "we have that with the fact that he drew the plan, he being Knobloch, told Davis where to go, what to take, where to go after taking it, where to store it, meeting with Goodwin, and it was all done at the bequest [behest] of Mr. Knobloch." Id. In response to this, Knobloch's counsel observed that "it is certainly Jeff Davis'

position that Paul Knobloch orchestrated this," but she challenged Davis's credibility by noting that he had been cooperating with the government and that "[h]e puts the blame on other people." Id. Up to this point, no one had mentioned the previous trial of Jason Smith in which Davis had testified before the same judge. Knobloch's counsel made the first reference to the trial when she asserted that "I don't think it is at all clear from the record as it exists, even in Jason Smith's trial from the bit I've heard about it, that this was orchestrated by Paul Knobloch. If anything, there was a dual role with Jeff Davis and Paul Knobloch together working out this scheme." J.A. at 75-76. In response to this, the prosecutor argued as follows:

5

> Judge, just for purposes of making your determination, I would cite you to these facts that give Knobloch or at least put him in a position of being that supervisor or manager. He is the one that is there when it's unloaded. He is the one that is called by Smith. He is the one that goes to Smith's trailer later that morning and finds out later the contents of it by Smith, it isn't Davis. And even in Knobloch's grand jury testimony, it's always him, he knows it. Your Honor, he is the one -- Davis testified to you in Court that you could also draw the inference of Knobloch's supervisory role. Davis had never been to Smith's trailer, had never been there before, didn't know what to do. And you can premise your decision on those factors.

J.A. at 76 (emphasis supplied). Knobloch's counsel did not object to this reference to Davis's testimony at Smith's trial. The district court concluded that a two level role in the offense enhancement was appropriate since Knobloch was "an organizer, leader, manager, or supervisor" of the crime. J.A. at 86.

When attention was turned to the possibility of an enhancement under U.S.S.G. S 2D1.1(b)(1), the government stressed that the firearms it was relying on for this purpose were those that were alleged in Count 3 to have been possessed in connection with the underlying offense charged in Count 2, i.e., the possession of the anabolic steroids in the apartment with intent to distribute. It pointed out that these guns were to be distinguished from the Glock 19 seized at the time of the Davis distribution which provided the foundation for Knobloch's conviction under 18 U.S.C. S 924(c) for carrying a firearm in relation to the distribution to Davis. Even though the plea agreement called for the dismissal of Count 2, the government urged only that the court find a nexus between

the Spectre .45 and TEC-9 weapons and the possession of the anabolic steroids in the apartment, as alleged in that count. The government did not ask the court to find a nexus between the possession of these weapons and the distribution to Davis. The district court found that the Spectre .45 and TEC-9 were possessed in connection with the unlawful possession of the cache in the apartment, but

6

it made no finding with respect to any nexus between those firearms and the distribution to Davis. Knobloch's counsel argued against a finding of a connection between the weapons and the cache in the apartment, but she did not object to the absence of a finding of a connection between them and the Davis distribution. Nor did she make any reference to U.S.S.G. S 2K2.4 or its Application Notes, the provisions Knobloch relies upon before us. Based on its finding of a nexus with the cache in the apartment, the court enhanced Knobloch's offense level under S 2D1.1(b)(1) and sentenced him to 147 months of imprisonment.

II. Standard of Review

Knobloch did not raise before the district court any of the three alleged errors he relies on before us.2 Accordingly, we will review Knobloch's judgment of conviction and sentence solely for plain error. See Fed. R. Crim. P. 52(b); 18 U.S.C. S 3741; United States v. Oser, 107 F.3d 1080, 1088 (3d Cir.), cert. denied, 118 S. Ct. 206 (1997).

In United States v. Olano, 507 U.S. 725 (1993), the Supreme Court held that, in order for an appellate court to find plain error, it must first find 1) an error 2) that is plain and 3) that affects substantial rights. Even if all three of these prerequisites are met, an appellate court may correct an error to which no objection was made "only if (4) the error `seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " Johnson v. United States, 117 S. Ct. 1544, 1549 (1997) (quoting Olano, 507 U.S. at 732) (internal quotation marks omitted).

_____

2. Two months after he entered his plea and on the same day that he filed his objections to the PSI, Knobloch moved to withdraw his guilty plea on grounds not relevant to this appeal. The motion did not refer to the district court's misdescription of the elements of the offense charged in Count 5. The district court denied the motion immediately prior to sentencing.

7

III. Discussion

A. The Guilty Plea

The government concedes that the district court erred when it described one element of the S 924(c)(1) offense as "during and/or in relation to" a drug crime, and it further concedes that the error was plain. We agree with the government, however, that this error did not affect Knobloch's substantial rights. The Supreme Court explained in Olano that "affected substantial rights" in the context of plain error review "in most cases . . . means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." Olano, 507 U.S. at 1778. The burden is on the defendant to show that the error in fact prejudiced him, and "[i]n most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial." Id.; see also United States v. Bethancourt, 65 F.3d 1074, 1079 (3d Cir. 1995).

Knobloch insists that the facts of this case are such that the district court's misstatement could have been material to a decision on how to plead to Count 5. We have searched the record in vain, however, for any claim by Knobloch that he would have entered a different plea had the district court correctly described the necessary elements of the offense. It is thus apparent that Knobloch was not prejudiced by the district court's misstatement of the law. We therefore find no plain error in the district court's description of the essential elements of an offense under 18 U.S.C. S 924(c)(1).

B. Role in the Offense

We also decline to find plain error in the possibility that the district court may have relied on testimony from another trial to support its conclusion that Knobloch was a leader, organizer, or supervisor. No rule of law prohibits the court from making its factual conclusions at sentencing based on testimony from a separate proceeding, United States v. Reyes, 930 F.2d 310, 316 (3d Cir. 1991), and Knobloch concedes as much. Nonetheless, Knobloch

8

focuses on dictum from Reyes stating that "the defendant must be given a reasonable opportunity to respond to the evidence." Id. (citing Fed. R. Crim. P. 32(c)(3)). He insists that his attorney was taken by surprise by the court's

consideration of Davis's testimony at Smith's trial and that he lacked a reasonable opportunity to respond to this damaging evidence.

Knobloch's counsel clearly was not surprised by any reference to Davis's testimony--in fact, it was she who first mentioned the testimony. Moreover, the record demonstrates that counsel was afforded ample opportunity after the prosecutor's response to say anything she wished about that testimony. The court was clearly entitled to understand from her argument that she felt she knew enough about Davis's testimony at Smith's trial to make a representation to the court concerning its content. Based on that fact and the fact that counsel, following the prosecutor's response, did not ask for an opportunity to review the transcript of Davis's testimony, we conclude that any consideration the district court gave to that testimony was not error, much less plain error.3

We note, as well, that the record shows no prejudice to Knobloch from this alleged error. Appellate counsel has had ample opportunity since the sentencing hearing to review Davis's testimony and articulate some basis for believing it would have benefited Knobloch in some way had the district court, sua sponte, ordered a continuance of the proceedings to afford defense counsel an opportunity for further preparation. No relevant theory of prejudice has been advanced in the briefing before us.

C. Dangerous Weapon Enhancement

Section 2D1.1(a) of the United States Sentencing Guidelines prescribes the base offense level for a crime involving trafficking or conspiring to traffic in drugs. Section 2D1.1(b)(1) provides a "specific offense

_____

3. To the extent Knobloch is contending that the record does not support the court's finding regarding his role in the offense, we conclude to the contrary.

characteristic" which directs that if "a dangerous weapon (including a firearm) was possessed [during the offense, the base offense level must be] increase[d] by 2 levels." Application Note 3 explains that the "adjustment should be applied if the weapon was present [during the underlying offense], unless it is clearly improbable that the weapon was connected with the offense."

Section 2K2.4 of the Guidelines provides that the

sentence for use of a firearm during and in relation to a drug crime in violation of 18 U.S.C. S 924(c) is "the term of imprisonment . . . required by statute." Under the circumstances leading to Knobloch's S 924(c) conviction, this sentence was a mandatory, consecutive, five years of incarceration. Application Note 2 to S 2K2.4 provides as follows:

> Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm (e.g., S 2B3.1(b)(2)(A)-(F) (Robbery)) is not to be applied in respect to the guideline for the underlying offense.

In determining Knobloch's sentence for the offenses in Counts 1, 4 and 5 to which he pled guilty, the district court grouped the marijuana conspiracy and steroid distribution offenses to arrive at a base offense level. It then applied a two-level specific offense characteristic enhancement for possession of the Spectre .45 and the TEC-9 under U.S.S.G. S 2D1.1(b)(1). In addition, pursuant to 18 U.S.C. S 924(c) and U.S.S.G. S 2K2.4(a), the district court imposed a mandatory five-year sentence--consecutive to the sentence for the drug offenses--on Count 5 for using and carrying the Glock 19 during and in relation to Knobloch's sale of steroids to Davis. We conclude that the district court committed plain error when it applied a two-level specific offense characteristic enhancement under S 2D1.1(b)(1) when it was required to impose a five year sentence under S 924(c).

The government's theory with respect to the S 2D1.1(b)(1) enhancement is not altogether clear to us. As we have noted, the indictment alleged that the Spectre .45 and TEC-

9 were possessed in connection with the offense charged in Count 2, i.e., possession of the carton of anabolic steroids in the apartment. At times, the government seems to suggest that, even though there has been no conviction under Count 2, possession of these weapons in connection with the crime there charged calls for a S 2D1.1(b)(1) enhancement because Knobloch stipulated that "the conduct charged in Counts Two, Three, and Six [could] be considered by . . . the District Court in imposing sentence." We reject that suggestion.

Knobloch did not stipulate that he could be sentenced other than in accordance with the Guidelines. The Guidelines specify base offense levels only for crimes of

which the defendant has been convicted, and it is apparent from its text and Application Note 3 that S 2D1.1(b)(1) authorizes a specific offense characteristic enhancement only for a dangerous weapon possessed in connection with the offense of conviction giving rise to the base offense level to be enhanced.[4]

At other times, the government appears to be arguing that the possession of the Spectre .45 and the TEC-9 calls for an enhancement under S 2D1.1(b)(1) because that possession was in connection with the anabolic steroid distribution to Davis charged in Count 4. This theory is flawed in two ways. First, the district court made no finding of any connection between the carton of steroids in the

_____

4. Knobloch stipulated in his plea agreement that "the conduct charged in Counts Two, Three and Six [was `relevant conduct' to] be considered by the District Court in imposing sentence." The possession of the guns in the apartment was thus clearly relevant conduct. But a sentencing court can look to relevant conduct only to answer the questions posed by the relevant guidelines. Here, the issue posed by S 2D1.1(b)(1) was whether Knobloch possessed a dangerous weapon in connection with the distribution to Davis, the offense upon which he was being sentenced, and the court was free to look to all relevant conduct in resolving this issue. The government, however, suggests that the court could properly look to relevant conduct to answer a question not posed by S 2D1.1(b)(1), i.e., whether Knobloch possessed a dangerous weapon in connection with his possession of the carton of steroids in the apartment, an offense of which he had not been convicted and on which he was not being sentenced. It is this suggestion that we reject.

11

apartment and the steroids distributed to Davis or of any other nexus between the Spectre .45 and the TEC-9 and the Davis transaction.

There is a more fundamental problem with the government's second theory, however -- one that could not be remedied if we were to remand for further proceedings. The government's problem here is irremediable because a S 2D1.1(b)(1) enhancement of the base offense level for the distribution to Davis is barred by the unambiguous directive found in Application Note 2 to S 2K2.4.

Courts are required to follow the Application Notes to the Federal Sentencing Guidelines in imposing sentences for federal offenses. Stinson v. United States, 508 U.S. 36, 38 (1993); United States v. Figueroa, 105 F.3d 874, 876 (3d Cir.), cert. denied, 117 S. Ct. 1860 (1997). Application Note 2 to U.S.S.G. S 2K2.4 plainly prohibits a two-level

enhancement under these circumstances for possession of any firearm--whether it be the one directly involved in the underlying offense or another firearm, even one in a different location. If the court imposes a sentence for a drug offense along with a consecutive sentence under 18 U.S.C. S 924(c) based on that drug offense, it simply cannot enhance the sentence for the drug offense for possession of any firearm.5

_____

5. The government asserts that three other courts of appeals have reached a contrary conclusion. We find none of the three cited cases persuasive on the relevant point because none of them undertakes any analysis of the Note or bases its legal conclusion on it. In United States v. Willett, 90 F.3d 404 (9th Cir. 1996), the court affirmed an enhancement for possession of a knife and a silencer along with a sentence under section 924(c). See id. at 407. The court in Willett addressed only an argument that this constituted impermissible double counting, not that it violated Application Note 2. In United States v. Washington, 44 F.3d 1271 (5th Cir. 1995), the court also addressed a double counting argument--not an asserted violation of Application Note 2. Washington had received a sentence under 924(c) for his firearm as well as an enhancement pursuant to section 2K2.4 because he had armed his accomplice with another firearm. Although the court quoted Application Note 2, see id. at 1280-81 n. 31, it did not analyze or base its legal conclusion on the Note. It concluded only that this did not constitute double counting because the 924(c) sentence and the 2K2.4

12

Thus, the court erred in applying the dangerous weapon enhancement to Knobloch's sentence. We further conclude that this error was plain, i.e., clear. Given the unambiguous directive of Application Note 2 and the fact that it was specifically called to the attention of the district court by the Probation Office, we are at a loss to explain why that Application Note was ignored in the course of the sentencing. As we have noted, to support a discretionary correction of this "plain error," the district court's mistake must have affected Knobloch's substantial rights in a way that seriously affects the fairness, integrity, or public reputation of judicial proceedings. We have no trouble acknowledging that the error in this case in fact affected Knobloch's substantial right to suffer no greater an imposition on his liberty than the Guidelines allow. We also recognize that the Guidelines were designed to promote fair and consistent treatment of offenders, and that the diversion from the Guidelines in this case seriously affected the fair administration of the sentencing process. The two-level enhancement to Knobloch's base offense level increased his sentencing range from 130-147 months to 147-168 months.6 Under these circumstances, we hold that

the court committed plain error when it enhanced
Knobloch's sentence in contravention of Application Note 2
to U.S.S.G. S 2K2.4.
_____

enhancement related to two separate guns. Finally, in United States v.
Kimmons, 965 F.2d 1001 (11th Cir. 1992), the court devoted one
paragraph to the sole issue of double counting, and it did not refer to
Application Note 2. Kimmons also received a 924(c) sentence and a
2K2.4 enhancement because he had armed both himself and his
accomplice in a robbery. Thus, none of the cases cited by the
government interprets Application Note 2. Nor does any of them present
a situation, like the one here, where Application Note 2 was specifically
called to the attention of the court as a bar to the enhancement at issue.

6. This calculation includes the consecutive mandatory 60-month
sentence under 18 U.S.C. S 924(c) added to base levels 27 and 29.

13

IV. Conclusion

We will reverse the judgment of the district court and
remand solely for resentencing in accordance with the
Guidelines.

14

ROSENN, Circuit Judge, concurring:

I concur with the majority with respect to its disposition
that there was no plain error in the district court's
description of the essential elements of an offense under 18
U.S.C. S 924(c)(1). I also agree with the majority that there
was no plain error in the district court's reliance on
testimony from another trial in concluding that Knobloch
was a leader, organizer, or supervisor. I, therefore, join with
it as to these aspects of its opinion. I write separately
primarily because, although I agree with the result the
majority reaches as to all three issues in this appeal, I
cannot agree that plain error is the proper standard of
review of the defendant's claim that the district court
improperly enhanced his base offense level based on his
possession of two firearms in connection with his storing a

cache of steroids in his apartment.

As to the weapons possession issue, Knobloch contends that the enhancement violated U.S.S.G. S 2K2.4, Application Note 2. See Maj. op. at 10 (quoting Application Note 2). According to Knobloch, the application note prohibits a district court from enhancing, pursuant to U.S.S.G. S 2D1.1(b)(1), a defendant's base offense level for possessing a firearm when the defendant also is to be sentenced for a violation of 18 U.S.C. S 924(c)(1) even if the S 924(c)(1) sentence is for a different weapon than the weapon upon which the enhancement is predicated.

The majority and I agree that Knobloch is correct on this point. The majority, however, concludes that plain error is the standard of review of this claim. See Maj. op. at 2, 7. The plain error standard of review applies on appeal when a defendant fails to object to an error in the court below. See Fed. R. Crim. P. 52(b). The record and the briefs do not support the majority's conclusion that Knobloch failed to object to the enhancement. The Government explicitly and unequivocally conceded in its brief that Knobloch properly preserved this issue for appeal. Indeed, it stated that Knobloch's challenge "presents a legal issue subject to plenary review," see Gov't's br. at 2, and the Government never even mentioned "plain error" in connection with its argument on this issue. Id. at 23-25. That concession was appropriate in light of Knobloch's timely objection to the

15

imposition of the enhancement, albeit on a slightly different ground, (see App. at 80-81), and the probation officer's refusal to recommend the enhancement citing Application Note 2. See Addendum to Presentence Investigation Report at 1. I do not think that this court should second guess the Government's concession in its brief that Knobloch properly preserved this issue for appeal especially when there is no reason to do so.

Although this may appear to be a small point, it is critical to this case. If plain error is the appropriate standard of review of Knobloch's claim, this court could not correct the error. A court of appeals may correct an unobjected-to error only if the error was "plain" and if it affected the defendant's "substantial rights." Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 732 (1993). An error is plain only if it is "clear" or "obvious." 507 U.S. at 734 (citing United States v. Young, 470 U.S. 1, 17 n.14 (1985) and United States v. Frady, 456 U.S. 152, 163 (1982)). The rules permit a court of appeals to correct such an error because it is so clear or obvious that the district court

should have avoided it even if it was not pointed out by the parties. The error committed by the district court in this case certainly was not clear or obvious. Indeed, the district court's construction of Application Note 2 may have been flawed but it was reasonable, was supported by case law from three other courts of appeal, and there are no cases to the contrary. The Fifth, Ninth, and Eleventh Circuit courts of appeal have all addressed this issue and determined that enhancement of a defendant's base offense level based on the possession of a firearm is permitted even when a defendant will receive a S 924(c)(1) sentence as long as the enhancement and sentence are based on different weapons, as is the case here. See United States v. Willett, 90 F.3d 404, 408 (9th Cir. 1996) ("We find that the district court did not err in imposing the two-level enhancement on top of the S 924(c) conviction because the commission of a drug trafficking crime with a gun, silencer and knife poses a greater risk than does the commission of the same crime with only a gun"); United States v. Washington, 44 F.3d 1271, 1280-81 (5th Cir. 1995) (permitting two-level enhancement based on co-conspirator's handgun possession when defendant is also to receive S 924(c)

16

sentence for a different weapon); United States v. Kimmons, 965 F.2d 1001, 1011 (11th Cir. 1992) (same). Even if those cases are distinguishable on the grounds offered by the majority, they are not so plainly or obviously so as to make reliance upon them unreasonable. I, therefore, believe that under these circumstances, plain error should not be ascribed to the district court and the defendant may unequivocally raise the issue on appeal.

I also note my disagreement with the majority's statement that the sentencing guidelines "authorize[ ] a specific offense characteristic enhancement only for a dangerous weapon possessed in connection with the offense of conviction ...." Maj. op. at 11. Although philosophically I may agree that this should be the rule, the language of the guidelines and the case law are to the contrary. It is well settled that when sentencing a defendant, a district court must consider all conduct relevant to the offense of conviction. U.S.S.G. S 1B1.3 provides that specific offense characteristics applied in controlled substance possession and distribution cases are to be determined based on "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." See also United States v. Frierson, 945 F.2d 650, 652-53 (3d Cir. 1991) ("relevant conduct also includes all acts and omissions that were `part of the same course of conduct or common scheme or plan as the offense of

conviction' ") (quoting U.S.S.G. S 1B1.3).1 According to the guideline commentary, offenses are part of the same course of conduct if they are similar to each other or are committed close in time. See U.S.S.G. S 1B1.3, Application Note 9(B).

In this case, there is no serious dispute that Knobloch's August 28, 1995, possession of the steroids in his apartment is part of the same course of conduct as the offense of conviction, the August 28, 1995, distribution of steroids to Davis. Both offenses were committed on the same day and involve the same drug. If that is the case, then the possession of the two firearms in connection with

_____

1. Accord United States v. Ortega, 94 F.3d 764, 767-68 (2d Cir. 1996); United States v. Ignacio Munio, 909 F.2d 436, 439 (11th Cir. 1990).

17

the steroids stored in Knobloch's apartment must be part of the same course of conduct as the distribution of steroids to Davis. Thus, application of the specific offense characteristic of firearms possession is appropriate. U.S.S.G. S 1B1.3, Application Note 3 does not support the majority's conclusion that specific offense characteristics only apply to the offense of conviction. Indeed, that application note states that conduct for which the defendant was not convicted must be considered in calculating an offense level as long as it comes within the definition of S 1B1.3.

Nonetheless, I would still reverse the district court on this issue because U.S.S.G. S 2K2.4, Application Note 2 prohibits a district court from enhancing a defendants' offense level no matter how many weapons a defendant possesses if he is to receive a sentence for a S 924(c)(1) violation as long as all of the weapons are possessed or used as part of the same course of conduct or common plan or scheme. This conclusion is mandated by the broad language used by the guideline drafters. Application Note 2 prohibits application of "any specific offense characteristic" for weapons possession when the defendant is to receive a sentence under S 924(c) (emphasis added).

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

18