**UNITED STATES of America,**

v.

**Steven HARTMAN, Appellant.**

No. 02–4458.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) July 22, 2003.

Decided Aug. 11, 2003.

Theodore B. Smith, III, Harrisburg, PA, for Appellee.

Daniel I. Siegel, Harrisburg, PA, for Appellant.

Before ALITO, FUENTES, Circuit Judges, and SURRICK,* District Judge.

## OPINION OF THE COURT

PER CURIAM.

A Grand Jury in the Middle District of Pennsylvania handed down a thirty-seven count second Superceding Indictment on March 26, 2002, charging Steven Hartman with mail fraud, wire fraud, obstruction of justice and making false statements.[1] These charges arose out of a fraudulent scheme in which Hartman auctioned off merchandise over the internet and then failed to ship the goods to the highest bidder after receiving payment through the mail. On June 4, 2002, Hartman entered a plea of guilty to Count One of the Indictment charging mail fraud.[2] On November 20, 2002, Hartman was sentenced to serve a period of incarceration of eight months to be followed by two years of supervised release. No fine was imposed but Hartman was directed to make restitution to his victims in the total amount of $4,845.55.

Hartman now raises an objection to the District Court's guilty plea colloquy. He contends that the colloquy was inadequate under Rule 11(c)(1) of the Federal Rules of Criminal Procedure because the District Court failed to advise him of the elements of the crime of mail fraud. Hartman argues that because the District Court failed to discuss the elements of the crime with him and because the guilty plea agreement did not include a recitation of the elements, the judgment of the District Court must be vacated and the case remanded for further proceedings.

Hartman never called this alleged error to the attention of the District Court. We, therefore, review the record for plain error only. *United States v. Knobloch*, 131 F.3d 366, 370 (3d Cir.1997). Moreover, as we observed in *Knobloch*, "... in order for an appellate court to find plain error, it must first find (1) an error (2) that is plain and (3) that affects substantial rights. Even if all three of these prerequisites are met, an appellate court may correct an error to which no objection is made 'only if (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." ' " *Id.* at 370 (quoting *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1987) (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (internal quotation marks omitted))).

Federal Rule of Criminal Procedure 11(c)(1) provides, in pertinent part, as follows:

Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... the

---

* Sitting by designation: R. Barclay Surrick, District Judge, Eastern District of Pennsylvania.

1. The indictment charged thirty-one counts of mail fraud (18 U.S.C. § 1341), four counts of wire fraud (18 U.S.C. § 1343), one count of obstruction of justice (18 U.S.C. § 1512(b)(2)), and one count of making false statements (18 U.S.C. § 1001(a)(2)).

2. The guilty plea agreement provided Counts 2 through 36 would be dismissed.

nature of the charge to which the plea is offered. . . .

Hartman argues that it is clear from the record that error was committed because the record reflects that he was never advised of the elements of the crime. He argues that the error is plain and obvious as revealed by the record and that the error affected his substantial rights because one of the core objectives of Rule 11 is to ensure that a defendant understands the nature of the charge to which he is pleading guilty. Finally, Hartman argues that the fairness, integrity and public reputation of the judicial proceeding was seriously affected because a guilty plea was accepted without the assurance that it was voluntarily and intelligently entered.

The government concedes that the colloquy does not include a specific description of each element of the crime. The government contends, however, that it is not necessary for the District Court to list seriatim the elements of the offense. Rather, all that is required is that the defendant understand the nature of the charge to which he is pleading guilty and the District Court's colloquy in this case satisfies that requirement. The government also argues that even if one were to conclude that the District Court committed error and that the error was plain, Hartman's substantial rights were not affected because he has failed to show that he was prejudiced by the error.

The essential elements of the crime of mail fraud are (1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme with the specific intent to defraud; and (3) the use of the United States mails in furtherance of the fraudulent scheme. The specific intent element may be found from a material misstatement of fact made with reckless disregard of the truth. *See Unit-*

*ed States v. Hannigan,* 27 F.3d 890, 892 (3d Cir.1994); 18 U.S.C. § 1341.

At the guilty plea hearing, the following exchange occurred between the Court, the Defendant and the Assistant United States Attorney concerning this crime:

THE COURT: At this point, I am going to ask Mr. Carlson to outline the government's evidence against you in this count. I would like you to listen carefully to what he says because I will then ask you whether you did engage in the conduct as he has described it.

MR. CARLSON: Yes, Your Honor. If this case had gone to trial, the government's evidence would have shown that in the late summer and fall of 2000, Mr. Hartman was offering goods over the Internet at an auction site that was open on the Internet for persons like Mr. Hartman who wanted to buy or sell property.

Specifically, Mr. Hartman was offering automobile parts, electronic equipment such as Palm Pilots and baseball memorabilia to individuals on the auction cite. A number of the items that Mr. Hartman was offering for sale he did not possess. But nonetheless, he was offering for sale.

When individuals bid on the items, Mr. Hartman would instruct them to mail payment to him with a promise to ship goods to them. In fact, Mr. Hartman was not able to acquire the goods he had offered on the site and was not able to make shipments to a number of customers.

When customers would complain, Mr. Hartman would send them electronic mail messages indicating that he was endeavoring to get shipments to them, but ultimately never made any such shipments.

Mr. Hartman received the payments from his various customers through the

U.S. mails. As the scheme progressed, Your Honor, Mr. Hartman found himself in a situation where a number of customers were asking for refunds or were posting complaints about his auction.

In response to those complaints that were posted on his auction, Mr. Hartman using a variety of e-mail names posted positive endorsements of his auctions in order to try to buy some additional time in which to either acquire goods or make customer refunds.

This pattern continued up through the early part of 2001. At that time, Mr. Hartman had been confronted by a local Police Officer and had told the local Police Officer he was making refunds. In fact, he had made a number of refunds. But in response to questions from the local Police Officer provided the Police Officer with several money order receipts that he indicated represented customer refunds. Two of those money order receipts in fact were not customer refunds, but were money orders he purchased and then cashed himself.

In March of 2001, Your Honor, Postal Inspectors executed a search warrant at Mr. Hartman's home where they recovered evidence of the mailing of these payments by various customers to Mr. Hartman.

They also had a chance to interview Mr. Hartman. He gave an oral and written statement. In that written statement, he acknowledged engaging in this conduct during a time of financial pressure in his life and admitted that he had offered for sale goods he did not possess, also acknowledged posting false endorsements of his business on the Internet in order to buy more time to make refunds, and acknowledged that two of the money order receipts representing refunds he had in fact cashed himself.

THE COURT: Count 1 involves Seldon Rocha?

MR. CARLSON: Yes. As to Mr. Rocha, Your Honor, at the time of the execution of the search warrant, Postal Inspectors recovered from the residence of Mr. Hartman the mailing envelope—the franked mailing envelope reflecting Mr. Rocha's mailing of a payment to the defendant for goods that Mr. Rocha never received.

THE COURT: Does mail fraud as used in this indictment include the allegation that Mr. Hartman never intended to fulfill these orders?

MR. CARLSON: Your Honor, the scheme as described in the indictment doesn't go to that ultimate issue. It notes that Mr. Hartman offered for sale goods he did not possess. That Mr. Hartman when questioned by customers regarding delivery of those goods provided false excuses as to why he had not yet delivered the goods.

The scheme goes on to recite that Mr. Hartman then posted false endorsements on his website to try to buy more time in order to either acquire the goods or make refunds. And then further that it was part of the scheme as alleged in the indictment that Mr. Hartman would then tell local Police that he had made refunds and show them money order receipts reflecting what he claimed to be refunds when in fact two of the money order receipts he had cashed himself.

THE COURT: Those facts are the frauds—

MR. CARLSON: Yes, sir.

THE COURT: —you are alleging in Count 1?

MR. CARLSON: Yes.

THE COURT: Mr. Hartman, is that a fair summary of what occurred here?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any explanations that you wish to offer at this time?

THE DEFENDANT: No, Your Honor.

THE COURT: You will have an opportunity, of course, to state anything you want to in connection with the preparation of the presentence report. And when it is prepared, we will have sentencing.

I will ask you then, sir, how do you plead to Count 1 of this superseding indictment, guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: I think Mr. Hartman has made a voluntary and knowing decision, and we accept his plea. We will request a presentence report. And as soon as it is prepared, we will set a sentencing date.

Although we encourage district courts as part of their colloquy to advise defendants of the statutory elements of the crimes to which they are pleading guilty, this is not specifically required by Fed.R.Crim.P. 11. *See In re Sealed Case*, 283 F.3d 349, 353 (D.C.Cir.2002) ("Rule 11(1)(c) does not *require* that the district court spell out the elements of the charge in order to inform the defendant adequately."). All that is required is that the Court "inform the defendant of, and determine that the defendant understands ... the nature of the charge to which the plea is offered...." Fed.R.Crim.P. 11(c)(1). In the instant case, we are satisfied based upon the above recited colloquy that Steven Hartman fully understood the nature of the charge to which he was pleading guilty. Although the District Court did not specifically advise Hartman of each element of the crime or couch its discussion in the language of the statute, Hartman admitted engaging in conduct. that, in fact, constitutes the crime of mail fraud. Hartman admitted that he intentionally entered into a scheme to defraud others which involved the use of the United States mails, and he advised the Court that he was pleading guilty to that crime. Nothing more is required.

In any event, even if the colloquy was not sufficient, Hartman would not be entitled to relief. In order for this Court to find plain error, we must also find that the subject error affected substantial rights. This means that the error must have been prejudicial in that it affected the outcome of the District Court proceeding. The burden is on the defendant to show such prejudice. *Knobloch*, 131 F.3d at 370.

Hartman has failed to show that he suffered any prejudice as a result of the failure of the District Court to advise him of the elements of the crime of mail fraud. He has not suggested that the outcome of the proceedings would have been different but for this error. Hartman has not requested that he be permitted to withdraw his plea nor has he indicated that he would have gone to trial if he had been advised of the elements. He has not indicated that he would have behaved any differently had the colloquy been different. He simply states that the error was plain and the judgement must be vacated. Under the circumstances, it is clear that Hartman's substantial rights were not affected. Moreover, we fail to see how the fairness, integrity and public reputation of judicial proceedings are in any way adversely affected by this guilty plea proceeding. We will affirm the judgment of conviction and sentence.